Filed 3/2/15  In re Tanner B. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re TANNER B. et al., Persons Coming Under the Juvenile Court Law. | B253597/B258789 (Los Angeles County Super. Ct. No. CK57753) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. KENNETH B., Defendant and Appellant. | |

APPEALS from orders of the Superior Court of Los Angeles County, Marguerite Downing, Juvenile Court Referee.  Reversed.

John L. Todd, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and William D. Thetford, Deputy County Counsel, for Plaintiff and Respondent.

_____

**INTRODUCTION**

In his first appeal (B253597), Kenneth B. (father) challenges the dependency court's November 6, 2013 order placing his four minor children, Tanner B.,[1] Chance B., Pamela B., and Garrett B.[2] with the Department of Children and Family Services (the Department) for suitable placement. Kenneth, the children's noncustodial parent at the time of the November 6, 2013 hearing, argues the court failed to make the requisite detriment finding under Welfare and Institutions Code section 361.2, subdivision (a)[3] before placing his children with the Department. In his second appeal (B258789), Kenneth challenges the court's August 19, 2014 jurisdictional order issued under a subsequent dependency petition (§ 342) filed by the Department on May 22, 2014, through which his children were adjudged dependents of the court after the court sustained the petition's allegation that his history of amphetamine and methamphetamine use placed his children at risk of harm. Father argues the jurisdictional order is not supported by substantial evidence. We reverse both orders.

**FACTUAL AND PROCEDURAL SUMMARY**

*1. The Original Dependency Petition (§ 300)*

On October 1, 2012, the Department filed a petition alleging that, among other things, Brigitte experienced mental and emotional problems, including a major depressive disorder for which she failed to take prescribed medications, placing the children at risk of physical harm. The petition also alleged that Brigitte left the younger two children

---

[1]  The dependency court recently terminated its jurisdiction as to 18-year-old Tanner (who lived with his mother, Brigitte B., throughout the pendency of these proceedings) so our discussion regarding Tanner is limited. Likewise, because Brigitte has not appealed, our discussion of her is similarly limited to facts relevant to Kenneth's appeals.

[2]  Sometimes collectively referred to as the children.

[3]  All statutory references to this code.

(Pamela and Garrett) home alone without adult supervision, placing them at risk of physical harm.[4]  (§ 300, subd. (b).)

Kenneth B., who was not mentioned in the petition's allegations, appeared at the detention hearing that same day.  He was found to be the presumed father of the children and was appointed counsel.  The dependency court ordered the children to remain released to their parents, with Brigitte's residence as their primary residence; the Department was ordered to provide family preservation services.

2. *The Family's Prior Child Welfare History*

In its report filed in advance of the jurisdiction and disposition hearing, the Department recounted the family's prior child welfare history.[5]

In 2000, in Orange County, a dependency petition and supplemental petition filed on behalf of Tanner and Chance were sustained, based on findings Brigitte and Kenneth had a history of engaging in domestic violence in the children's presence and both had unresolved substance abuse histories.  Kenneth had been arrested during a drug raid (in Tanner's presence, causing him undue emotional distress); Brigitte had a positive drug test and had failed to test; Brigitte had struck both Tanner and Chance, and Chance had been left home alone.  Initially, the dependency court ordered family maintenance services, but after Brigitte had a positive drug test and failed to test in violation of the

---

[4]    There were additional allegations pursuant to subdivisions (a), (b) and (j) of Welfare and Institutions Code section 300 that Brigitte had allowed Tanner to excessively discipline his younger siblings and had a 12-year history of drug use, with four convictions for use of or being under the influence of a controlled substance and one conviction for possession of a controlled substance, such that Tanner and Chance had been dependents in the past due to her substance abuse.  However, these allegations were dismissed at the January 3, 2013 hearing.

[5]    There were other referrals in addition to those described in the text, but we do not include them here as they were classified as unfounded.

3

court's orders, the children were detained in December 2000. The dependency court's jurisdiction (Orange County) was terminated two years later (in December 2002).

Then, in Los Angeles County in January 2005, Brigitte and Kenneth were arrested for child neglect, and the children (Tanner, Chance, and Pamela) were taken into protective custody. The Department filed a petition alleging that, on a number of occasions, Brigitte and Kenneth left Tanner and Chance home alone for extended periods of time without adult supervision endangering their safety and placing Pamela at risk; this petition was sustained as well. (§ 300, subd. (b), (j).) The children were initially detained in foster care but were apparently returned to their parents' custody the next month, with family maintenance services ordered on the condition that Brigitte and Kenneth would remain living in Kenneth's parents' home. A few months later, the Department filed an amended petition alleging Brigitte had taken the children from the paternal grandparents' home in violation of the court's order, failed to keep the Department apprised of their whereabouts for three days, and left the children alone at night without adult supervision. Thereafter, Brigitte complied with court-ordered programs addressing her parenting, domestic violence, and addiction history. The children were ordered placed back in Brigitte's home in January 2006, and the dependency court terminated its jurisdiction in January 2007.

Two and a half years later, in August 2009, the Department received a referral alleging general neglect and caretaker absence/incapacity as to both Brigitte and Kenneth and physical abuse against the children's maternal grandmother. All allegations were found to be substantiated, and the children were detained. Brigitte and Kenneth were living separately at the time, and neither could be located; the maternal grandmother was reportedly caring for the children. A related petition was reportedly dismissed in

4

December, and the children were released to their parents with no specific custody orders in place. The Department closed its case in January 2010.[6]

### 3. *The Jurisdiction and Disposition Hearing on the Original Dependency Petition*

In its November 7, 2012 jurisdiction and disposition report, the Department reported that the dependency investigator was unable to interview Kenneth "as he failed to avail himself to the Department to be interviewed regarding the allegations."

At the jurisdiction and disposition hearing on January 3, 2013, Kenneth appeared and waived reading of the petition as he was noted to be a "non[-]offending" parent. The dependency court sustained the allegations that Brigitte had left the children home alone without supervision and that she had unresolved mental health issues.[7] The court then found the children were dependents within the meaning of subdivision (b) of section 300 and ordered the children to remain placed with Brigitte under the Department's supervision. The dependency court ordered the Department to provide family maintenance services to both Brigitte and Kenneth. The matter was continued to July 3, 2013 for a review hearing. (§ 364.)

### 4. *The First Subsequent Dependency Petition (§ 342)*

On June 14, 2013, the children were removed from Brigitte's custody and placed with Kenneth. On June 26, 2013, the Department filed a petition pursuant to section 342, adding allegations that an unrelated 13-year-old boy had unlimited access to the children and had molested Pamela as Brigitte left her and Garrett home alone without supervision for extended periods of time. The subsequent petition further alleged, Pamela and Garrett

---

[6] In addition to the foregoing child welfare history, the Department reported Brigitte had six prior drug-related convictions (five for "use/under influence of controlled substance" (September 1993; April, June, July and September 1994) and one for "possession of control[led] substance" (February 2000)).

[7] Brigitte stipulated to the factual basis for the petition's allegations.

had been dependents in Orange County because Brigitte had left them home alone unsupervised in the past.

According to the Department's detention report dated June 25, 2013, when the social worker asked Kenneth if he would be able to have custody over all of the children, he said "he could take Chance and Pamela only." When the social worker (Donna Jackson) asked why he could not take the other two children, he said, "Garrett is very active and [Kenneth's] parent[s] are up in age and would not be able to tolerate [Garrett's] active behavior. As for Tanner[,] he is the oldest and could remain with [Brigitte]. Kenneth . . . stated that he lives with his parent[s] and they do not have the space for all of the children. But he is willing to let his niece Kendra B[.] have custody over all four children to keep them together."

In an "Addendum Report" also dated June 25, 2013, another social worker said she had spoken with Kenneth that day and confirmed he would appear at the detention hearing the following day. In the addendum report, the Department recommended that Kenneth "[p]articipate in [four] consecutive random drug and alcohol tests, if any positive tests, [Kenneth] to complete a substance abuse rehabilitation program with random testing" and "[f]urther investigation as to [Brigitte's] and [Kenneth's] current drug use and the physical abuse of the children by sibling Tanner and [Brigitte's] failure to protect and the petition amended if needed[.]"

In a last minute information report filed on June 26, 2013, the Department informed the dependency court that Kenneth had "consented to have all four [c]hildren detained from his custody because he is unable to care for his [c]hildren. At this time [they] are placed with [p]aternal [a]unt, Kendra B[.]"[8]

On June 26, 2013, with Kenneth in attendance, the dependency court ordered Chance, Pamela and Garrett detained and placed with their paternal aunt pending the next

---

[8]     Kendra B. is described as both Kenneth's niece and the children's paternal aunt in the record.

hearing, with the further order Kenneth "may reside with paternal aunt." The Department was given discretion to place the minors with "any appropriate relative or extended family member." The Department was to provide Brigitte and Kenneth with family reunification services. Notwithstanding the Department's recommendations in its June 26, 2013 addendum report, there was no mention of drug testing or any other drug-related investigation as to Kenneth in the dependency court's orders of that date. Tanner, who was 17 at the time of the hearing, was released to Brigitte. The dependency court continued the matter to July 23, 2013 for "receipt of report" and to August 29, 2013 for adjudication of the contested section 342 petition.

In its status review report for the July 3, 2013 hearing, the Department reported the three younger children were living with Kendra, their paternal aunt. The Department recounted the dependency court's orders of January 3, 3013, but no subsequent orders were identified. Further, there was no mention of any investigation into Kenneth's current drug use or any request that he submit to drug testing. In detailing the Department's "contacts" with the family, there was no mention of Kenneth. The hearing was continued to July 23, 2013 "to follow the hearing regarding the [subsequent] petition [pursuant to section] 342."[9]

According to the Department's jurisdiction and disposition report for the August 29, 2013 hearing on the subsequent petition, Brigitte told the social worker she felt the three younger children's placement with their paternal aunt "will help [them] emotionally. They will be able to interact with [Kenneth] who lives close. My children are happy . . . ." When Kenneth was interviewed on June 7, 2013, he said he had "no problems with my niece[] Kendra B[.] taking care of my children. She is a very responsible young lady and I entrust that she will do whatever is needed for my children

---

9       There is no reporter's transcript for June 26, July 3 or July 23, 2013.

7

and I will help as much as possible."[10]  The children were happy living with their aunt. There was no mention of any investigation into whether Kenneth was currently using drugs or any request that he submit to a drug test.

On August 29, 2013, the dependency court noted Kenneth had filed a J.V. 140 form indicating that he had a new address.  The court also noted that the Department intended to assess Kenneth's home for potential placement.  The court ordered the Department to provide a supplemental report regarding placement with Kenneth; the court continued the matter to September 11, 2013 for a progress hearing, and it set an adjudication hearing on November 6, 2013.  Both parents were ordered to appear at the adjudication hearing without further notice.

At the September 11, 2013 progress hearing, the Department informed the court that on June 7, 2013, Kenneth had said he lived with his parents, who did not have the space for all four children.  According to the social worker, Kenneth was "currently" living with his parents, and on September 6, 2013, she asked them about Kenneth having Chance, Pamela and Garrett in their home.  Kenneth's parents reportedly stated that they did not have the space to accommodate their grandchildren, and that they were unable to assist Kenneth with caring for the children because of their age and health problems. Kenneth's parents did state, however, that they did not have any problem allowing the children to spend the night at their home.

The social worker also informed the court that she had received an anonymous call informing her that Kenneth was using drugs.  According to the social worker, she then asked Kenneth to submit to a drug test on June 18, 2013, at which he failed to appear.  On September 6, 2013, the social worker again asked Kenneth to submit to a drug test, but he stated "'I'm the non-offending parent and I did not need to drug test and I will talk to my

---

10      The Department noted Kenneth was receiving Social Security benefits.

8

attorney[.]'" The social worker stated that the Department was concerned that Kenneth could drive with the children in his car while he was under the influence of drugs. The social worker recommended that, despite his non-offending status, Kenneth submit to an on-demand drug test. The social worker also recommended that if Kenneth refused to submit to a drug test, the court not allow the children to stay with Kenneth overnight, require Kenneth's visits with the children be monitored, and preclude Kenneth from transporting the children.

At the progress hearing, Chance, Pamela, and Garrett were ordered to remain placed with their paternal aunt. After stating "all prior orders remain in full force and effect," the dependency court said: "I'm advising Mr. B[.], through his attorney, that although he is a non[-]offending party, he has unmonitored visitation, and he is subject to court orders. [¶] The Department's request is that he randomly drug test, and if he refuses to randomly drug test or if his test results are missed or dirty, his visitation, that is currently unmonitored, is going to revert back to monitored. [¶] The Department has discretion, once he complies, to liberalize his visits."[11]

   5. *The Jurisdiction and Disposition Hearing on the First Subsequent Petition*

At the November 6, 2013 adjudication hearing, the Department informed the dependency court that Kenneth had yet to submit to any on-demand drug tests. According to the Department, the assigned social worker had made numerous attempts to contact Kenneth about scheduling a drug test, but Kenneth had not responded to any of the social worker's messages.

Kenneth did not appear at the November 6, 2013 adjudication hearing. Kenneth's attorney informed the court that she had contacted Kenneth before the hearing and would be requesting a continuance of the disposition hearing on his behalf. The dependency court declined counsel's request for a continuance, noting that the disposition hearing had

---

[11]   According to the record, Kenneth did not attend the progress hearing.

already been continued twice, once on August 29, 2013 and again on September 11, 2013.

The court received the Department's six reports into evidence. Kenneth's counsel presented no evidence. When invited to present argument, Kenneth's counsel responded: "No argument with regard to the adjudication, Your Honor. My client is non-offending." After hearing argument from the attorneys representing Brigitte, the Department, and the children, the dependency court sustained the following allegations: (1) that on prior occasions, Brigitte had left Pamela and Garrett home alone without adult supervision for extended periods of time; (2) Chance and Pamela were prior dependents (in Orange County) for the same reason; and (3) Brigitte's failure to provide supervision placed Chance, Pamela, and Garrett at risk. (§ 300, subds. (b) & (j).) The court dismissed the remaining allegations. The court then found the previous disposition had not been effective in protecting the children. When the court asked for the case plan, counsel for the Department said she thought "dispo[sition] was going over" so she had not prepared one.

Kenneth's counsel then requested the opportunity to address the issue of suitable placement. She requested that the children be released to Kenneth because he was a non-offending, noncustodial parent under the original and subsequent petitions. She stated that Kenneth would be able to have some of the children live within him in his parents' home. Kenneth's counsel argued that the Department had failed to produce any evidence demonstrating that Kenneth could not care for his children. She argued that the Department's report of the anonymous call alleging that Kenneth had been using drugs was unsubstantiated, and highlighted the fact that the Department had not filed a petition against Kenneth due to his alleged drug use. Kenneth's counsel also addressed Kenneth's failure to submit to a drug test, arguing that Kenneth did not believe he was required to submit to any additional testing in the children's current case because he had already tested around the time the original petition was filed.

10

Chance's counsel joined with Kenneth's counsel's argument. Counsel for the Department argued: "I'm not inclined to release these children to [Kenneth]. One reason is although he's non[-]offending, he was ordered to randomly drug test and I don't have any information that he is refusing to test and there was an anonymous call that he might be using. But the test was his opportunity to show me that the anonymous call was not true. I have told him and the Department has told him, he still refuses to test." Pamela's and Garrett's counsel joined with the Department.

When Kenneth's counsel asked to respond, the court interjected: "I gave you the opportunity to be heard, [counsel]. And as [Pamela's] counsel indicated, these children were released to him. We tried to do a [prerelease investigation]. He indicated he couldn't keep the children and then we had the issue with respect to drug use. He currently has monitored visits. So a home of parent father order is not appropriate."

Kenneth's counsel then said: "I would just object. I don't believe the Department has established [its] burden."

When the dependency court interrupted her again, she responded: "I am making a record."

The dependency court continued: "[Y]ou were asked to be heard. I said[] No. No is very clear. [Y]ou had your opportunity to be heard."

The court then found "by clear and convincing evidence pursuant to [section 361, subdivision (c)], there is a substantial danger if these children were returned to their [sic] physical health and emotional well[-]being and that there are no reasonable means by which they may be—these children may be protected without removing them from the parents' physical custody. [¶] They are hereby removed from [Brigitte], the parent with whom they resided at the time this petition was filed. Their care, custody, control and conduct is placed under the supervision of the Department . . . for suitable placement."

The dependency court granted the Department's request for suitable placement of Chance, Pamela, and Garrett.

11

Kenneth's counsel inquired: "If the court is ordering that [Kenneth] test, which I understand the court is, [I request] there at least be a limitation as to the number of tests that he is required to provide. I would ask [that] the Department have discretion to liberalize his visits back to unmonitored once they have established that the tests are clean."

The dependency court responded: "He didn't comply."

Kenneth's counsel then said: "I would like to point out to the court he was not here for September 11th. I do believe . . . in fact [it] appears [his counsel at that hearing] sent him a letter. He indicated to me when I spoke without him he didn't get the letter. Didn't read the letter. [¶] I'm not sure he was present in court when the court made the order."

The court: "[H]is attorney was. I don't know why he was not here, that's between him and his attorney. You may know more than I do. He was ordered back for subsequent days. . . . I cannot tell you why he's not here now. The court is going to make a case plan."

The dependency court then ordered Brigitte to provide five random or on-demand drug tests, and to complete a drug treatment program if any tests were missed or dirty. Based on Brigitte's non-compliance with most of the court's prior orders (including the order to drug test) and the sustained petition, the Department argued the children would be at risk with unmonitored visitation with their mother. The dependency court responded that although Brigitte had skipped some of her tests and therefore failed to do six consecutive drug tests as ordered, "I don't really see drugs as an issue in this case. [¶] [A]t least I don't have any evidence [she left the children home—] because she was doing drugs . . . . [¶] . . . [¶] I'm going to allow her to keep unmonitored day visits, over the Department's objection.

"I think the children at this stage are old enough so that if anything inappropriate happens, that the . . . children are able to communicate."

12

When Kenneth's counsel asked if the court would consider allowing Kenneth to provide a set number of tests, the court responded: "No. My problem with Mr. B[.] is he won't comply for various reasons. I'm wondering whether or not he is using drugs, and he just won't get on the ban[d]wagon."

Kenneth's counsel responded: "The court just made the order September 11th. [¶] My client advised me he was not aware of it. He tested previously for the Department." The dependency court again rejected the request to order a set number of tests. The court ordered Kenneth to submit to random and on demand consecutive drug testing and, if any tests were missed or dirty, to complete a drug rehabilitation program with random testing. The court also ordered monitored visitation for Kenneth two times a week for three hours, at a minimum, with a monitor approved by the Department. The court added that the test results were to be part of the progress report prepared for January 8, 2014.

Kenneth filed a notice of appeal from the order of November 6, 2013 (B253597).[12]

6. *Kenneth's Positive Drug Test*

On January 8, 2014, the Department informed the dependency court that Kenneth had submitted to an on-demand drug test which was positive for amphetamine and methamphetamine on December 10, 2013.

---

[12]    In connection with this first appeal, we requested and received minute orders subsequent to the November 6, 2013 hearing, and then supplemental letter briefs from the parties to address what effect, if any, proceedings occurring on August 19, 2014 had on Kenneth's appeal. Because Kenneth filed notice of a second appeal and that appeal had the potential to render moot his first appeal, we vacated submission in the first appeal (B253597) and deferred our ruling in that matter in order to consider the merits of the more recent appeal (B258789) and then proceed accordingly. (See *In re A.B.* (2014) 225 Cal.App.4th 1358, 1364 ["so long as the jurisdictional finding under the subsequent petition is supported by substantial evidence, reversal of the jurisdictional finding under the original petition would be futile"].)

On February 20, 2014, the Department said it had learned from Kendra B. that Kenneth had been arrested on January 13, 2014 for a felony and had a court date set for March 5.[13]

According to the Department's status report, Kenneth told the social worker he had been arrested for contempt of court on January 13, 2014, and he had no further court dates. According to the inmate information sheet attached as an exhibit to the report, Kenneth had had one court date on March 5, 2014, had been released on March 6, 2014, and had another court date set for September 4, 2014.[14]

Chance, Pamela, and Garrett continued to live with their paternal aunt Kendra while Kenneth continued to live with his parents nearby; his parents monitored his visits with the children, which were held twice a week for three hours.

On May 20, 2014, the Department informed the court that it would be filing a section 342 petition as to Kenneth, due to his positive drug test in January 2014 and his failure to comply with court-ordered drug testing.

7. *The Second Subsequent Dependency Petition (§ 342)*

On May 22, 2014, the Department filed a subsequent petition alleging Kenneth "is an abuser of illicit drugs including amphetamine and methamphetamine, which render [him] incapable of providing regular care and supervision of [Chance, Pamela, and Garrett]." The Department cited Kenneth's positive drug test on December 10, 2013, and said he had failed to comply with court orders for random drug testing. The Department alleged Kenneth's illicit drug abuse and noncompliance with court orders endangered the children's health and safety and placed them at risk of physical harm. (§§ 300, subd. (b) & 342.)

---

[13] The offense is not identified in the record.

[14] We find no further mention of criminal proceedings in the record.

The Department reported Kenneth's visitation was monitored because of his positive drug test on December 10, 2013, and said he had agreed on April 6, 2014, to submit to an on-demand test but had failed to do so.[15] The report concluded that Kenneth "appears to have a substance abuse problem."

On June 25, 2014, the dependency court continued the hearing to July 14, 2014, ordering the Department to interview Kenneth and to file a supplemental report by July 10, 2014.

In a last minute information report dated July 10, 2014, the social worker indicated she had spoken with Kenneth the day before regarding the allegations in the recently filed petition, and he said he did not have a history of abusing drugs; he had been "clean" since his release from jail; he had not known he was supposed to be drug testing; he had had a stroke four years earlier and did not "remember things that well"; and if he tested positive on December 10, 2013, it could have been because of an antihistamine inhalant he was taking for congestion, stating "[t]hat's the only thing it could have been." Kenneth said he had been in a drug program for the past three months and provided the program name, address, and phone number as well as the name of his counselor, indicating he would ask her to prepare a progress letter for him. He said that he attended the program for 90 minutes each week for group counseling, and that he participated in individual counseling afterward. He said that he had almost completed the 12-session program and was willing to undergo drug testing through the Department.

On July 14, 2014, the hearing was continued again for "further report [to be filed by August 15, 2014] and contested hearing."

_____

15    Although the record contains documentation of Brigitte's missed tests, we find no such documentation regarding Kenneth.

15

According to the report dated August 19, 2014, the social worker had contacted Kenneth by telephone on April 4 and July 9, 2014, and had met with him in person on April 6, May 8, and June 19, 2014. The report stated that Kenneth had informed the Department that he would like to have his children in his custody. The report also contained the same information included in the July 10, 2014 last minute information report, including Kenneth's statement that he was willing to submit to drug testing through the Department (but without mention of any Department-requested or Department-scheduled testing date(s) or result(s)). The report also stated that, on August 15, 2014, the social worker had contacted Kenneth's counselor, but she was unable to discuss Kenneth's progress without a consent to release of information.

8. *The Jurisdiction and Disposition Hearing on the Second Subsequent Petition*

At the August 19, 2014 jurisdiction and disposition hearing, the Department submitted on its reports and presented no live witnesses. The dependency court sustained the petition as to Kenneth, noting he "had a positive test[,] and he has refused to test for a variety of reasons, in addition to the fact he was incarcerated." "His position alternately had been he was nonoffending so he shouldn't have to test; or, in the alternative, he's happy to test, but, for a variety of reasons, he never makes it to a test; or that he's not using and the test was just a mistake and he was probably taking some prescribed medication. But he's never shown proof of that medication [or of completion of his drug program]." By clear and convincing evidence, the court concluded the children's return to their father would create a substantial risk of harm and ordered them removed them Kenneth's custody, to remain placed with their paternal aunt under the Department's supervision. The court ordered reunification services for Kenneth, including individual counseling and participation in a "full-on" drug treatment program with random drug testing.[16] The court allowed the Department discretion to liberalize Kenneth's monitored

---

[16] The court noted that it would recognize any drug-treatment programs Kenneth had enrolled in and completed since the time the section 342 petition was filed.

16

visitation. The matter was continued to October 23, 2014 for a contested 12-month review hearing on the original section 300 petition.[17] (§ 366.21, subd. (f).)

Kenneth filed a notice of appeal from the court's order of August 19, 2014 (B258789).

## DISCUSSION

### I. Kenneth's Second Appeal (B258789)

In appealing from the dependency court's August 19, 2014 order sustaining the subsequent petition alleging Kenneth's substance abuse placed his children at substantial risk of physical harm (§ 300, subd. (b)), Kenneth argues the Department failed to demonstrate the required nexus between his conduct and a current risk of substantial harm to the children. (*In re David M.* (2005) 134 Cal.App.4th 822, 829 (*David M.*).) Citing *In re Destiny S.* (2012) 210 Cal.App.4th 999, 1003, he argues the use of hard drugs, standing alone, is insufficient to support jurisdiction.

Citing our decision in *In re Christopher R.* (2014) 225 Cal.App.4th 1210 (*Christopher R.*), the Department argues the record supports the inference Kenneth's drug use was not a "one-time event" and says "it is clear that [Kenneth] has a substance abuse problem, or rather a substance use disorder." Although the Department acknowledges that the record contains no evidence demonstrating how much time Kenneth spends

---

[17] We requested and have received minute orders reflecting the proceedings in this matter following the August 19, 2014 hearing. Pursuant to Evidence Code sections 452, subdivision (d), and 459, subdivision (a), we take judicial notice of the minute orders dated October 23 and December 15, 2014, and January 20, 2015. (*In re C.C.* (2009) 172 Cal.App.4th 1481, 1487, fn. 3.) At the review hearing on October 23 (§ 366.21, subd. (f)), the dependency court noted Kenneth was in compliance with his case plan but found continued jurisdiction necessary; the matter was continued to December 15 for a hearing pursuant to section 366.22. On December 15, the matter was continued to January 20, 2015, and then to March 5 for the contested hearing.

getting and using methamphetamine, it asserts that "it is very clear that [Kenneth] places his need for the drug over his responsibility to his children."

### 1. *The Governing Statutes and Standard of Review*

As relevant, section 342 specifies as follows: "In any case in which a minor has been found to be a person described by Section 300 and the petitioner alleges new facts or circumstances, other than those under which the original petition was sustained, sufficient to state that the minor is a person described in Section 300, the petitioner shall file a subsequent petition. . . . [¶] All procedures and hearings required for an original petition are applicable to a subsequent petition filed under this section."

"Section 300, subdivision (b), allows a child to be adjudged a dependent of the juvenile court when '[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse.'" (*Christopher R.*, *supra*, 225 Cal.App.4th at p. 1215.) "In short, there are three elements for jurisdiction under section 300, subdivision (b), namely, (1) neglectful conduct or substance abuse by a parent in one of the specified forms; (2) causation; and (3) serious physical harm to the child, or a substantial risk of such harm. [Citations.]" (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724-725 (*Rebecca C.*).) In Kenneth's case, the issue is whether his use of amphetamine and methamphetamine has caused harm or poses a substantial risk of harm to his children.

"We review the juvenile court's jurisdictional findings for sufficiency of the evidence. [Citations.] We review the record to determine whether there is any substantial evidence to support the juvenile court's conclusions, and we resolve all conflicts and make all reasonable inferences from the evidence to uphold the court's orders, if possible. [Citations.] 'However, substantial evidence is not synonymous with

18

*any* evidence.  [Citations.]  A decision supported by a mere scintilla of evidence need not be affirmed on appeal.  [Citation.]  Furthermore, "[w]hile substantial evidence may consist of inferences, such inferences must be 'a product of logic and reason' and 'must rest on the evidence' [citation]; *inferences that are the result of mere speculation or conjecture cannot support a finding* [citations]." [Citation.] "The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record." [Citation.]'  [Citation.]"  (*David M.*, *supra*, 134 Cal.App.4th at p. 828.)

> 2.  *The August 19, 2014 Jurisdictional Findings and Dispositional Order Are Not Supported by Substantial Evidence*

In *Christopher R., supra,* 225 Cal.App.4th 1215, we considered the court's analysis in *Drake M., supra,* 211 Cal.App.4th 754.  As the *Drake M.* court had explained, "when the Legislature rewrote section 300, subdivision (b), in 1987 to include as a basis for dependency jurisdiction a parent's inability to provide regular care for his or her child due to substance abuse, it included no definition of the term 'substance abuse' in the statute.  (*Drake M.*, at p. 765.)  Similarly, the legislative history revealed no specific discussion of how the term should be defined in practice.  As a result, 'd]ependency cases have varied widely in the kinds of parental actions labeled "substance abuse."'  (*Ibid.*)" (*Christopher R., supra,* 225 Cal.App.4th at p. 1217.)

In an effort to avoid inconsistencies, the *Drake M.* court had proposed a definition of substance abuse based on the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000) (DSM-IV-TR), and we recognized that formulation as a "generally useful and workable definition of substance abuse for purposes of section 300, subdivision (b)." (*Christopher R., supra,* 225 Cal.App.4th at p. 1218.)  We cautioned, however, that the DSM-IV-TR formulation was "not a comprehensive, exclusive definition mandated by either the Legislature or the Supreme Court," and we rejected the mother's argument in *Christopher R.* that only someone who has been diagnosed by a medical professional or who falls within one of

19

the specific DSM-IV-TR categories can be found to be a current substance abuser."
(*Ibid.*)

Moreover, we noted the DSM-IV-TR's definition of "substance abuse" had already been replaced in the Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition (DSM-5), published in May 2013 (after the decision in *Drake M.*), by a more broadly defined classification of "substances abuse disorders," combining substance abuse and dependence. (*Christopher R., supra,* 225 Cal.App.4th at p. 1218, fn. 6.) "DSM-5 identifies 11 relevant criteria, including cravings and urges to use the substance; spending a lot of time getting, using, or recovering from use of the substance; giving up important social, occupational or recreational activities because of substance use; and not managing to do what one should at work, home or school because of substance use. The presence of two or three of the 11 specified criteria indicates a mild substance use disorder; four or five indicate a moderate substance use disorder; and six or more a severe substance use disorder. (American Psychiatric Association, Highlights of Changes from DSM-IV-TR to DSM-5 <http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf> [as of Apr. 14, 2014].)" (*Christopher R., supra,* 225 Cal.App.4th at p. 1218, fn. 6.)

According to the Department, the petition was properly sustained because Kenneth had a positive drug test on December 10, 2013, and stated he had been "clean" since his release from jail which occurred on March 6, 2014. If true, the Department says, at the time of the hearing on the section 342 petition, he had only been drug free for five months; he said he had completed a 12-week program he attended once a week for 90 minutes at a time, but "[i]t is the nature of addiction that one must be clean for much longer to show real reform."[18]

---

18    Unlike the determination to be made at a jurisdictional hearing, the cases the Department cites involve section 388 petitions, where a parent must demonstrate (1) a genuine change of circumstances or new evidence and (2) that revoking the previous order would be in the best interests of the children. (*In re Marcelo B.* (2012) 209

Furthermore, the Department asserts—without citation to any supporting evidence in the record—instead of using his SSI to obtain a place to live where he could care for his children (as all three could not live with him at his parents' home), he used it to buy methamphetamine, knowing all along that his continued drug use could lead to termination of his parental rights.[19]

Notably, in its respondent's brief in connection with Kenneth's first appeal, the Department expressly conceded, based on the record through November 2013 (before Kenneth's positive drug test in December 2013): "Granted, the evidence of [Kenneth]'s drug use was nominal and would not have supported jurisdiction or an order removing the children from father had he been a custodial parent." Thereafter, Kenneth had one positive drug test on December 10, 2013. By February 20, 2014, the Department had learned Kenneth had been arrested for a felony on January 13, 2014 and as of April 2014, knew he had been released from jail on March 6, 2014. There is no indication in the

---

Cal.App.4th 635, 642 [father had received extensive treatment for alcoholism and had achieved a period of sobriety but relapsed four months after reunifying with his son; although he reentered treatment after losing custody, he continued to deny negative impact his alcoholism had on his son]; *In re C.J. W.* (2007) 157 Cal.App.4th 1075, 1081 [both parents had extensive histories of drug use and failing to reunify with their children, and their "recent efforts at rehabilitation were only three months old at the time of the section 366.26 hearing"]; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 531, fn. 9. [considering a "parent who loses custody of a child because of the consumption of illegal drugs[,]" the court stated: "It is the nature of addiction that one must be 'clean' for a much longer period than 120 days to show real reform"].)

According to DSM-5, "Early remission from a DSM-5 substance use disorder is defined as at least 3 but less than 12 months without substance use disorder criteria (except craving), and sustained remission is defined as at least 12 months without criteria (except craving)." (American Psychiatric Association, Highlights of Changes from DSM-IV-TR to DSM-5 <http://www.dsm5.org/Documents/changes%20from%20dsm-iv-tr%20to%20dsm-5.pdf> [as of Feb. 3, 2015].)

[19] According to the record, because he had had a stroke four years earlier, Kenneth was on disability and received about $600 a month.

record that Kenneth's arrest involved drugs. As stated in the Department's later report, he told the social worker he had been "clean" since his release from jail in early March, 2014.

As the *Destiny S.* court stated, "It is undisputed that a parent's use of marijuana, '*without more*,' does not bring a minor within the jurisdiction of the dependency court." (*Destiny S.,* at p. 1003, original italics.) "The same is true with respect to the use of hard drugs. (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 817, 825–826, 2 Cal. Rptr. 2d 429 [(*Rocco M.*)] [mother's cocaine use standing alone was not sufficient basis or jurisdiction under § 300, subd. (b)]; see *In re Jeannette S.* (1979) 94 Cal.App.3d 52, 59, fn. 2 [156 Cal. Rptr. 262] [father's alcoholism alone did not support jurisdiction under § 300, subd. (b)].)" (*Destiny S.,* at p. 1003; see also *Drake M., supra,* 211 ca 4 at p. 766 ["Although a finding of substance abuse is necessary under . . . section 300, subdivision (b), it does not always follow that such a finding means that the parent or guardian at issue is unable to provide regular care resulting in a substantial risk of harm to the child"].)

To support a jurisdictional finding under section 300, subdivision (b), the Department had to present "evidence of a specific, nonspeculative and substantial risk to [Chance, Pamela, and Garrett] of serious physical harm" stemming from Kenneth's use of amphetamine and methamphetamine. (*Destiny S., supra,* 210 Cal.App.4th at p. 1003, citing *David M., supra,* 134 Cal.App.4th at p. 830 [jurisdiction under section 300, subdivision (b), reversed where mother had continuing substance abuse problem but there was no evidence of a specific, defined risk of harm from her substance abuse].) Here, the Department produced no evidence demonstrating that Kenneth's drug use caused any harm or posed any substantial risk of harm to his children.

At the time of the August 2014 jurisdictional hearing on the section 342 petition in this case, whether Kenneth had a substance abuse problem was relevant only to the extent it affected his ability to care for his children. (*In re B.T.* (2011) 193 Cal.App.4th 685, 693; *In re James R., Jr.* (2009) 176 Cal.App.4th 129, 137 (*James R.*) ["The mere

possibility of alcohol abuse, coupled with the absence of causation, is insufficient to support a finding the minors are at risk of harm within the meaning of section 300, subdivision (b)"].)  The record contains no evidence demonstrating that Kenneth's conduct had caused actual harm to Chance (then 15), Pamela (10) or Garrett (9), nor does it contain evidence demonstrating that his conduct created a substantial risk of serious harm to these children.  (*James R., supra,* 176 Cal.App.4th at p. 136; *In re Ricardo L.* (2003) 109 Cal.App.4th 552, 567 [other than parent's arrests for being under the influence of methamphetamine six and seven years prior to hearing, there was no evidence in record of parent's substance abuse history or history of neglect; "[w]ithout the history of abuse and neglect, it is nearly impossible to determine whether [the child] is at risk of suffering from the same abuse and neglect"] .)  To the contrary, the children were happy and doing well living with their paternal aunt and spending time with Kenneth who lived nearby.  (See *Rocco M., supra,* 1 Cal.App.4th 814, 824 ["the fact that a child has been left with other caretakers will not warrant a finding of dependency if the child receives good care"].)

These children were not of "such tender years that the absence of adequate supervision and care poses an inherent risk to their physical health and safety."  (*Rocco M., supra,* 1 Cal.App.4th at p. 824.)  Moreover, there is no indication the children were ever around Kenneth when he was under the influence of drugs; that Kenneth ever drove the children while under the influence of any drugs; that the children ever had access to Kenneth's drugs; or that Kenneth otherwise placed the children at a current risk of harm because of his drug use.

Because there is no evidence that Kenneth's drug use or abuse placed his children at current risk of serious physical harm as required for dependency jurisdiction pursuant to section 300, subdivision (b) (*David M., supra,* 134 Cal.App.4th at p. 831), the order sustaining the petition is not supported by substantial evidence.  (See *Rebecca C., supra*, 228 Cal.App.4th at pp.727-728.)

Given our conclusion that the jurisdictional findings must be reversed, the dispositional orders must also be reversed.[20] (*James R., supra*, 176 Cal.App.4th at p. 137; *David M., supra*, 134 Cal.App.4th at p. 833.) We now turn to Kenneth's first appeal.

## II. Kenneth's First Appeal (B253597)

Kenneth argues reversal of the November 2013 order is also required because the dependency court did not make a finding that placing the children in his custody would be detrimental to their safety, protection or physical or emotional well-being as required by section 361.2. According to the Department, Kenneth forfeited his right to challenge the dispositional order for failure to apply section 361.2, the dependency court did not err as it made appropriate findings required by the statute, and substantial evidence supported the dependency court's decision not to place the children with their father.[21] Again, we agree with Kenneth.

---

[20]    Because our reversal of the jurisdiction order requires us to also reverse the disposition order, we need not and do not address Kenneth's argument that the dependency court erred as a matter of law in ordering the children removed from his custody under section 361 because the children did not reside with him at the time the dependency court issued its jurisdiction and disposition orders.

[21]    We reject the Department's argument Kenneth forfeited his argument the dependency court failed to apply or comply with section 361.2. Although, as a general rule, a party who does not raise an argument in the trial court forfeits that argument on appeal, application of the forfeiture rule is not automatic, and when, for example, the appellant raises a question of law, an appellate court has discretion to address the issue. (*In re Abram L.* (2013) 219 Cal.App.4th 452, 462 (*Abram L.*), citing *In re V.F.* (2007) 157 Cal.App.4th 962, 967-968 (*V.F.*), superseded by statute on other grounds, as recognized in *In re Nickolas T.* (2013) 217 Cal.App.4th 1492, 1503.) As the court concluded in *Abram L., supra,* 219 Cal.App.4th at page 462, the arguments raised here are primarily issues of law. Further, at the disposition hearing, Kenneth's counsel repeatedly objected, arguing the Department had failed to meet its burden to show the children would be at risk if placed with Kenneth, their nonoffending noncustodial parent, and the dependency court told Kenneth's counsel she had exhausted her opportunity to be heard. "Under these circumstances, we decline to hold that [Kenneth], a nonoffending

24

*1. The Dependency Court Erroneously Failed to Apply Section 361.2*

Pursuant to section 361, subdivision (c)—the statute cited by the dependency court in entering the orders from which Kenneth appeals, a dependent child may not be taken from the physical custody of a parent with whom he resided at the time the petition was initiated, unless the [dependency] court finds by clear and convincing evidence that at least one of certain enumerated circumstances exists. One such circumstance exists where "[t]here is or would be a substantial danger to the physical health, safety, protection or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor form the minor's parent's . . . physical custody." (§ 361, subd. (c)(1).)

According to the record in this case, the dependency court found the requirements of section 361, subdivision (c)(1) were satisfied on the basis of the *mother's* conduct— just as the dependency court in *Abram L., supra,* 219 Cal.App.4th 452, had done. (*Id.* at p. 460 ["Mother did not appeal the dispositional order and we assume the court's finding was supported by substantial evidence"].) "[The children], however, could not be removed from [their] *father's* physical custody under section 361, subdivision (c)(1) because they were not residing with him when the petition was initiated. (*V.F., supra*, 157 Cal.App.4th at p. 969 [§ 361, subd. (c) ""'does not, by its terms, encompass the situation of the noncustodial parent'"'].)"[22] (*Abram L., supra,* 219 Cal.App.4th at p. 460, original italics.)

and noncustodial parent, forfeited his arguments regarding his constitutionally protected interest in assuming physical custody over his children." (*Abram L., supra,* 219 Cal.App.4th at p. 462.)

[22] As the Department acknowledges in its respondent's brief, language in the record is imprecise in referring to "parent(s)" and "parents" and suggesting both Brigitte and Kenneth had physical custody of the children, but the Department also concedes: "There

25

Rather, the court should have considered father's request that his children be placed in his custody under section 361.2.[23] (*Abram L.*, *supra*, 219 Cal.App.4th at p. 460.) Under subdivision (a) of section 361.2, "When a court orders removal of a child pursuant to Section 361, the court shall first determine whether there is a parent of the child, with whom the child was not residing at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child. If that parent requests custody, the court shall place the child with the parent unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well-being of the child." (§ 361.2, subd. (a).)

To comport with the due process requirements protecting a parent's fundamental right to care, custody, and management of his child "'a finding of detriment pursuant to section 361.2, subdivision (a) must be made by clear and convincing evidence.' [Citation.]" (*Abram L.*, *supra*, 219 Cal.App.4th at p. 461; see also *Isayah C.*, *supra*, 118

---

could have been no question in anyone's mind, including the juvenile court's, that [Kenneth] was a noncustodial parent."

23    At oral argument, the Department argued Kenneth's request for custody was not sufficient to trigger application of section 361.2, subdivision (a) because he did not request to take physical custody of all his children; rather, he requested that only some of his children reside with him in his parents' home, with the other children to reside with their paternal aunt, Kendra. We disagree. Under section 361.2, "a parent may have custody of a child, in a legal sense, even while delegating the day-to-day care of that child to a third party for a limited period of time." (*In re Isayah C.* (2004) 118 Cal.App.4th 684, 700 (*Isayah C.*), fn. omitted; see also *V.F.*, *supra*, 157 Cal.App.4th at p. 971.) Accordingly, Kenneth's request for custody of his children was sufficient to trigger application of section 361.2, subdivision (a). This does not mean, however, that upon remand, the dependency court may not consider the children's placement in separate homes as a factor in determining whether granting Kenneth custody of the children would be detrimental to their safety, protection, or physical or emotional well-being. (See *In re Luke M.* (2003) 107 Cal.App.4th 1412, 1422-1423 [in evaluating detriment under section 361.2, subdivision (a), the dependency court may consider the impact placement with the noncustodial parent would have on the dependent children's relationships with their siblings].)

Cal.App.4th at p. 697 ["a nonoffending parent has a constitutionally protected interest in assuming physical custody, as well as a statutory right to do so, in the absence of clear and convincing evidence that the parent's choices will be 'detrimental to the safety, protection, or physical or emotional well-being of the child.' [Citation.]"].) "Under the plain terms of the statute, if the juvenile court finds that placing a child in the physical custody of a noncustodial parent would not be detrimental to the child within the meaning of section 361.2, subdivision (a), it must place the child in the physical custody of the noncustodial parent." (*Abram L.*, *supra*, 219 Cal.App.4th at p. 461.) "Section 361.2, subdivision (c) provides that '[t]he court shall make a finding either in writing or on the record of the basis for its determination under subdivisions (a) and (b).'" (*Ibid.*)

Just as in *Abram L., supra,* 219 Cal.App.4th 452, nothing in the record before us suggests the dependency court considered the requirements of section 361.2 in determining whether to deny Kenneth's request for physical custody of Chance, Pamela and Garrett. As in *Abram L.*, the dispositional order does not refer to section 361.2 or the standard set forth in subdivision (a) of the statute to deny a noncustodial parent physical custody of his or her children; to the contrary, the dependency court cited to section 361, subdivision (c), its statutory language, and the conduct of the children's mother. (*Id.* at p. 461.) Also, as in *Abram L.,* in its oral remarks regarding Kenneth's request for possible placement of the children with their father, the dependency court did not refer to section 361.2 or use the operative language of the statute. (*Ibid.*) Furthermore, the Department did not request the court to consider section 361.2 in its November 6, 2013 jurisdiction and disposition report.[24] (See *ibid.*) In light of the foregoing, we conclude the dependency court did not apply the applicable law to Kenneth's request for physical custody of the children.

---

[24] Indeed, in this case, the Department's counsel indicated there was no proposed case plan in anticipation that the disposition hearing would be continued.

## 2. *We Decline to Make Implied Findings*

Citing *In re S.G.* (2003) 112 Cal.App.4th 1254, the Department asserts "it is clear from the record the [dependency] court had section 361.2 in mind when it denied [Kenneth's] attorney's request that the children be released to [him]." The Department argues that, based on the record, we may imply that the dependency court's statement that releasing the children to father would not be appropriate supports a finding that the children's release to Kenneth would be detrimental. (See *In re S.G.*, *supra*, 112 Cal.App.4th at p. 1260.) We disagree.

As the court explained in *Abram L.*, "[u]nder *Marquis* and *V.F.*, it is inappropriate to make implied findings where the juvenile court fails to make express findings as required by section 361.2, subdivision (c)." (*Abram L., supra,* 219 Cal.App.4th at p. 463.) Accordingly, we decline to make implied findings in this case.

## 3. *Father Was Prejudiced By the Court's Dispositional Order*

To warrant reversal of the dependency court's dispositional order, Kenneth must have been prejudiced by the court's error in not applying section 361.2 to his request for placement of his children in his home. (*Abram L.*, *supra*, 219 Cal.App.4th at p. 463.) We will reverse if "'it is reasonably probable that a result more favorable to [Kenneth] would have been reached in the absence of the error.' [Citation.]" (*Ibid*.)

In light of the lack of evidence supporting a detriment finding before the dependency court at the time of the November 6, 2013 disposition hearing, we conclude it was reasonably probable the court would have placed the children in Kenneth's custody had it considered Kenneth's request under section 361.2. The Department argues that placement with Kenneth would have been detrimental to the children because of "the issue of [Kenneth's] possible drug use." The Department concedes, however, that the evidence of Kenneth's drug use at the time of the disposition hearing was "nominal" and based solely on the unsubstantiated anonymous call the Department's social worker received around June 2013. Nevertheless, the Department asserts that it would have been

unreasonable for the dependency court to grant Kenneth's request for placement because there was a potential harm that Kenneth would drive with the children in his car while under the influence of drugs. The Department cites no evidence to support this assertion. (See *David M.*, *supra*, 134 Cal.App.4th at p. 828 [speculation or conjecture alone does not constitute substantial evidence].) Accordingly, we conclude there is a reasonable probability the dependency court would have rejected the Department's detriment argument had it considered Kenneth's request for placement under the standard set forth in section 361.2. (See *In re C.M.* (2014) 232 Cal.App.4th 1394 (*C.M.*) [182 Cal.Rptr.3d 206, 213-214] [noncustodial parent's past substance abuse problems did not support a detriment finding where the underlying petition contained no substance abuse allegations against the noncustodial parent and there was no evidence that the noncustodial parent had recently abused illicit drugs].)

## DISPOSITION

The dependency court's August 19, 2014 jurisdictional order issued under the subsequent petition filed May 24, 2014 is reversed. All subsequent orders issued under that petition are vacated as moot. (*David M.*, *supra*, 134 Cal.App.4th at p. 833.) The dependency court's November 6, 2013 dispositional order issued under the subsequent petition filed June 26, 2013 is also reversed to the extent it denied Kenneth's request that the children be placed with him and ordered the children placed with the Department for suitable placement. The dependency court is directed to conduct a new disposition hearing under the June 26, 2013 subsequent petition. At the new disposition hearing, the court should consider under the standards set forth in section 361.2 father's request for placement of the children in his home, as well as what services father should be provided going forward. In making these determinations, the juvenile court may consider events that have taken place and circumstances that have arisen since the November 6, 2013

29

disposition hearing.  (*C.M.*, *supra*, 232 Cal.App.4th 1394 [182 Cal.Rptr.3d 206, 214]; *Abram L., supra*, 219 Cal.App.4th at p. 464, fn. 6.)[25]

**WOODS, J.**

**We concur:**

**PERLUSS, P. J.**                                    **ZELON, J.**

---

[25]     Our disposition of Kenneth's appeals does not affect the dependency court's orders issued with respect to the children's mother, Brigitte.  Accordingly, the dependency court should proceed with the March 5, 2015 section 361.22 hearing as it pertains to Brigitte.